IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARY EPPERSON, individually and as
natural mother and next friend of the
Decedent, Eddie Ray Epperson; JANICE
EPPERSON, individually and as next of
kin and next friend of the Decedent; and
SHARAE WILLIAMS, individually and
as daughter and next friend of the Decedent,

      Plaintiffs,

v.                                                                    No. 15-1074

CITY OF HUMBOLDT, TENNESSEE;
ROBERT ELLIS, individually and as Chief
of the Humboldt Police Department; ANTONIO
BUFORD, individually and as a member of the
Humboldt Police Department; KEVIN HILL,
individually and as a member of the Humboldt
Police Department; CHRIS SMITH, individually
and as a member of the Humboldt Police Department;
and JOHN DOES 1 THROUGH 10, individually and
as members of the Humboldt Police Department,

      Defendants.
_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS
_____

*INTRODUCTION*

      This action was initially brought on March 31, 2015, in the Circuit Court for Gibson

County, Tennessee, by the Plaintiffs, Mary Epperson, individually and as natural mother and

next friend of the decedent, Eddie Ray Epperson; Janice[1] Epperson, individually and as next of

_____

[1] While the original complaint identified this individual as "Janie," subsequent briefs filed
by the Plaintiffs referred to her as "Janice." The Court assumes the latter is correct.

kin and next friend of the decedent; and Sharae Williams, individually and as adult daughter and next friend of the decedent, against Defendants, the City of Humboldt, Tennessee (the "City"); Robert Ellis, Chief of the Humboldt Police Department; and Humboldt Police Department officers Antonio Buford, Kevin Hill, Chris Smith and John Does One through Ten. Plaintiffs allege violations of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, and the Tennessee Constitution. The complaint also claims violations of state law. The matter was removed to this Court on April 6, 2015. Pending before the Court is Defendants' motion to dismiss portions of the complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] (D.E. 32.)

## STANDARD OF REVIEW

The Rule permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Courts are to "construe[] the complaint in the light most favorable to the plaintiff, accept[] the plaintiff's factual allegations as true, and determine[] whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hall v. U.S. Bank, N.A.*, ___ F. App'x ___, 2015 WL 5438664, at *2 (6th Cir. Sept. 16, 2015) (internal alterations & quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Hall*, 2015 WL 5438664, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))

---

[2]The motion seeks an order "dismissing Plaintiffs' claims." (D.E. 32 at 1.) However, as the motion does not address all of the claims set forth in the complaint, the Court assumes it is one for partial dismissal.

(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

*FACTS ALLEGED*

Plaintiffs allege that, on April 3, 2014, Mr. Epperson was walking in the area of Gibson Welles Road when one or more of the individual Defendants, including Buford, Hill and Smith, attempted to detain him. It is their contention that, at the time of the encounter, the officers observed conduct on the part of Mr. Epperson indicating that he may have been unable to understand or appreciate the officers' verbal commands or that he may have been suffering from a mental disability or impairment. The complaint avers that, during the detention, one of the officers sat on Mr. Epperson's back while he was face-down on the ground and pulled his chin backward, causing or contributing to his death.

*PARTIES' ASSERTIONS AND ANALYSIS*

Defendants seek dismissal on the following grounds: (1) Mary and Janice Epperson lack standing to pursue relief; (2) Plaintiffs failed to sufficiently allege an individual capacity claim against Ellis; (3) the official capacity claims against the individual Defendants are redundant; (4) Plaintiffs failed to properly allege municipal liability against the City; (5) the Fourth Amendment, rather than the Fourteenth, provides the explicit source of relief for unreasonable seizures; (6) Tennessee law does not recognize a cause of action for violations of its constitution; and (7) under the Tennessee Governmental Tort Liability Act ("GTLA"), the City is immune from suit for injuries arising from civil rights violations. In response to the motion, Plaintiffs advise that they do not oppose dismissal of the individual capacity claims against Ellis. Those

claims are, therefore, DISMISSED. The remaining grounds for dismissal will be addressed seriatim.[3]

Standing of Plaintiffs Mary and Janice Epperson to Sue.

"Article III of the Constitution gives federal courts subject matter jurisdiction over actual cases or controversies, neither of which exists unless a plaintiff establishes his [or her] standing to sue." *Murray v. United States Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). Accordingly, "standing is the threshold question in every federal case." *Id.* (internal quotation marks omitted). Defendants submit that Mary Epperson, as the mother and next friend of Mr. Epperson, and Janice Epperson, his sister and next friend, lack standing to bring a § 1983 claim.

"It is well established in this Circuit that a [§] 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Foos v. City of Delaware*, 492 F. App'x 582, 592 (6th Cir. 2012) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)) (internal quotation marks omitted). Thus, "only the purported victim, or his estate's representative(s), may prosecute a [§] 1983 claim[.]" *Claybrook*, 199 F. 3d at 357.

Title 42 U.S.C. § 1988 provides that, in civil rights claims brought under § 1983, where federal laws

> are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . .

---

[3]In their response to the motion, Plaintiffs contend that "Defendants' argument for immunity under the Eleventh Amendment is misplaced." (D.E. 33 at 11.) However, as the Defendants point out in their reply, and as the Court reads the motion to dismiss, the Eleventh Amendment has not been raised. Therefore, it will not be addressed herein.

42 U.S.C. § 1988(a). The United States Supreme Court recognized in *Robertson v. Wegmann*, 436 U.S. 584 (1978), that "one specific area not covered by federal law is that relating to the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant." *Robertson*, 436 U.S. at 589 (internal quotation marks omitted). The Court identified the law of the forum as the "principal reference point in determining survival of civil rights actions[.]" *Id.* at 589-90; *see also Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) (same). Tennessee Code Annotated § 20-5-102 provides that

> [n]o civil action commenced . . . shall abate by the death of either party, but may be revived; nor shall any right of action arising hereafter based on the wrongful act or omission of another . . . be abated by the death of the party wronged; but the right of action shall pass in like manner as the right of action described in [Tennessee Code Annotated] § 20-5-106.

Under § 20-5-106,

> [t]he right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse, and, in case there is no surviving spouse, to the person's children or next of kin; to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent . . .

Tenn. Code Ann. § 20-5-106(a). Federal district courts in Tennessee have looked to § 20-5-106 to determine whether certain individuals have standing to sue for violation of the decedent's civil rights. *See Sipes v. Madison Cty.*, No. 12-1130, 2014 WL 2035685, at *1-2 (W.D. Tenn. May 16, 2014); *Davis v. Memphis Police Dep't*, No. 13-2497-JDT-dkv, 2013 WL 4446240, at *4-5 (W.D. Tenn. Aug. 15, 2013) (adopting report & recommendation); *Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:10-0589, 2010 WL 3619790, at *2 (M.D. Tenn. Sept. 13,

2010); *Marine v. City of Chattanooga, Tenn.*, Civ. Case No. 1:09-CV-219, 2009 WL 4348587, at *2-3 (E.D. Tenn. Nov. 24, 2009).

Under § 20-5-106(a), "the superior right to bring a survivor suit in Tennessee is granted first to a surviving spouse, then to any children, then to a parent, then to a sibling, and so forth." *Sipes*, 2014 WL 2035685, at *2. "An inferior beneficiary may not sue until the person with the prior and superior right waives [her] right of action." *Id.* (citing *Koontz v. Fleming*, 65 S.W.2d 821, 824 (Tenn. Ct. App. 1933)). Waiver may be effected "by permitting the plaintiffs' suit to stand without objection[.]" *Troutman v. Johnson City, Tenn.*, 392 F. Supp. 556, 558 (E.D. Tenn. 1973) (citing *Koontz*, 65 S.W.2d at 824) (internal alterations omitted).

In this case, it appears there is no surviving spouse of Mr. Epperson. Thus, the appropriate plaintiff to pursue his civil rights claims under § 20-5-106(a) is his adult child, Plaintiff Sharae Williams. As there is no evidence to suggest Ms. Williams has waived her right to bring this action, the individual claims of Mary and Janice Epperson are DISMISSED.

In response to the motion, Mary and Janice Epperson claim that one of them is "expected" to act as personal representative of the estate. An action "may be instituted by the personal representative of the deceased . . . or, if there is no surviving spouse, by the children of the deceased or by the next of kin[.]" Tenn. Code Ann. § 20-5-107(a). In such an instance, "the statutory beneficiary is the real party in interest, and neither the claim nor the recovery becomes a part of the estate of the deceased." *Holliman v. McGrew*, 343 S.W.3d 68, 73 (Tenn. Ct. App. 2009) (citing *Memphis St. Ry. Co. v. Cooper*, 313 S.W.2d 444, 448 (Tenn. 1958)). It is "well established" that a representative bringing suit "has no interest in the recovery and acts only as a medium for enforcing the rights of others." *Foster v. Jeffers*, 813 S.W.2d 449, 452 (Tenn. Ct. App. 1991) (citing *Cummins v. Woody*, 152 S.W.2d 246 (Tenn. 1941)); *see also Martin v. Corr.*

*Corp. of Am.*, 231 F.R.D. 532, 537 (W.D. Tenn. 2005) (administrator's interest is "wholly derivative of the interest of the permissible beneficiaries enumerated in the wrongful death statute"). The personal representative holds any "recovery as a trustee for the real beneficiaries . . ., and must account to them, whoever they may be, for the proceeds of the judgment." *Cooper*, 313 S.W.2d at 448. However, "an adult beneficiary has priority over an administrator in prosecuting his or her own action." *Foster*, 813 S.W.2d at 452; *see also Artrip v. Norfolk S. Ry. Co.*, No. 2:08-CV-200, 2009 WL 152482, at *2 (E.D. Tenn. Jan. 22, 2009) ("Any potential interest that an administrator might have in bringing a wrongful death action is subordinate to that of a surviving [statutory beneficiary]."); *Koontz*, 65 S.W.2d at 824 (holding that a spouse's right of action is prior and superior to that of an administrator and that "the latter cannot sue until [the statutory beneficiary] waives her right of action."). As noted above, there is no indication that Ms. Williams has waived her right of action in this matter. Thus, any claims of Mary and Janice Epperson as personal representatives are DISMISSED.

Section 1983 Claims.

### *The Statute Generally*

Section 1983 provides a private right of action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights[ or] privileges . . . secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). The statute "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). A plaintiff suing under the statute must demonstrate the denial of a constitutional right

caused by a defendant acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

*Official Capacity Claims*

Defendants move for dismissal of the Plaintiffs'[4] claims against the individuals in their official capacities. Such claims "are, in all respects other than name, to be treated as a suit against the entity." *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (internal quotation marks omitted). When, as here, the entity is a named defendant, official capacity claims against individual sheriffs and police officers are "redundant" and "superfluous." *Id.* Those claims are, therefore, DISMISSED. *See Buckner v. Roy*, Case No. 2:15-cv-10441, 2015 WL 4936694, at *6 (E.D. Mich. Aug. 18, 2015) (official capacity claims against sheriff dismissed where county was also a defendant); *Horn v. City of Covington*, Civ. Action No. 14-73-DLB-CJS, 2015 WL 4042154, at *3 (E.D. Ky. July 1, 2015) ("Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself; [t]herefore, when a plaintiff brings § 1983 claims against a municipal entity and a municipal official in his official capacity, courts will dismiss the official-capacity claims as duplicative.").

*Municipal Liability*

The Plaintiffs assert that the City failed to implement a policy for dealing with mentally impaired or disabled persons such as Mr. Epperson who were unable to understand or comply with officers' verbal commands. They further aver that the municipality failed to adequately train its officers in encountering such persons and had "repeatedly and knowingly" failed to

---

[4]Although the Court has dismissed Mary and Janice Epperson as plaintiffs in this case, it will, for purposes of consistency, continue to refer to the nonmovants in the plural.

discipline officers with respect to the use of excessive force thereon. (D.E. 1-1 ¶ 27(b).) According to the complaint, the City had a policy, practice and custom of permitting officers without training to initiate detention and restraint of mentally impaired or disabled persons with deliberate and reckless disregard for the risk of injury to the public.

A municipality can be held liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have caused one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir.) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)) (some internal quotation marks omitted), *cert. denied,* 135 S. Ct. 758 (2014). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)). A plaintiff "must adequately allege (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations." *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)) (internal alterations & quotation marks omitted). "A municipality may not be held liable under § 1983 on a *respondeat superior* theory -- in other words, *solely* because it employs a tortfeasor." *Id.* at 388-89 (quoting *Monell*, 436 U.S. at 691). "Municipal liability attaches only where the policy or practice in question is attributable to the municipality." *Id.* at 387 (citing *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)) (internal quotation marks omitted).

In order to establish municipal liability based on a failure to train, a plaintiff must show "(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, ___ F. App'x ___, 2015 WL 5332465, at *13 (6th Cir. Sept. 14, 2015) (citing *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)) (internal quotation marks omitted).  Deliberate indifference requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* (quoting *Plinton*, 540 F.3d at 464) (internal alterations omitted).  This standard of fault has been characterized as a "stringent" one, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  "A showing of simple or even heightened negligence will not suffice." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015) (quoting *Brown*, 520 U.S. at 407), *reh'g en banc denied* (Oct. 1, 2015).[5]  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S. Ct. at 1359.

In this Circuit, courts have rejected the application of either a heightened pleading standard or a lower one to § 1983 municipal liability claims.  *See Smith v. McCroskey*, No. 3:14-CV-437-PLR-CCS, 2015 WL 4744449, at *3 n.3 (E.D. Tenn. Aug. 11, 2015); *Horn*, 2015 WL 4042154, at *4.  "In the context of [§] 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal's* standards strictly." *Hutchison v. Metro. Gov't of Nashville & Davidson*

---

[5] Accordingly, to the extent the allegations contained in Count I of the complaint averring negligence on the part of the City have been brought pursuant to § 1983, they are DISMISSED.

*Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010); *see also Horn*, 2015 WL 4042154, at *4; *Sweat v. Butler*, 90 F. Supp. 3d 773, 778 n.1 (W.D. Tenn. 2015); *Vidal v. Lexington Fayette Urban Cty. Gov't*, Civ. Action No. 5:13–117–DCR, 2014 WL 4418113, at *2–3 (E.D. Ky. Sept. 8, 2014); *Hamer v. Cty. of Kent*, No. 1:13–CV–504, 2014 WL 1276563, at *6 (W.D. Mich. Mar. 27, 2014) (adopting report & recommendation); *Scott v. Giant Eagle, Inc.*, No. 1:12–cv–03074, 2013 WL 1874853, at *4 (N.D. Ohio May 3, 2013), *aff'd* (6th Cir. May 14, 2014).

A single constitutional violation may trigger liability if it is "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Bonner-Turner*, 2015 WL 5332465, at *13. For liability to attach under this circumstance, "the record must show a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)) (internal quotation marks omitted). That is, "if the need for more or different training is so obvious that the [municipality] is shown to have been deliberately indifferent to the need, then the [entity] may be deemed to have had a policy of deliberate indifference." *Id.* at 563. "However, mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Id.*

Where a plaintiff asserts a claim of a custom of tolerance toward constitutional violations, that is, a custom of inaction, she must make a showing of "(1) a clear and persistent pattern of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cty. of*

*Oakland*, ___ F. App'x ___, 2015 WL 3650168, at *4 (6th Cir. June 12, 2015) (internal quotation marks omitted); *see also Burgess*, 735 F.3d at 478 ("a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims"). In *Nouri*, the Sixth Circuit noted that it had "never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff." *Nouri*, 2015 WL 3650168, at *4. When the plaintiff has none but his own experience upon which to rely, a sufficient claim against the municipality has not been made. *Id.* Like a claim based on failure to train employees, one grounded in a custom of tolerance requires a showing of deliberate indifference. *Key v. Shelby Cty.*, 551 F. App'x 262, 267 (6th Cir. 2014); *D'Ambrosio*, 747 F.3d at 387-88.

Plaintiffs have offered no well-pleaded facts to support the legal conclusion that the City was on notice of a pattern or practice of unconstitutional uses of force by officers in its employ against mentally impaired persons or others who could not comply with instructions, or that it had a custom of ignoring violations or failing to discipline officers who engaged in such behavior. *See Nouri*, 2015 WL 3650168, at *4 (plaintiff's complaint found fatally deficient where it failed to set forth facts showing pattern of misconduct or reports to municipal officials in support of custom of tolerance claim against municipality); *Lowe v. McMinn Cnty.*, No. 1:15-CV-95, 2015 WL 5177734, at *5 (E.D. Tenn. Sept. 4, 2015) (plaintiff's allegation that municipality had not instituted a proper policy for dealing with persons in the midst of a mental break from reality and failed to train officers to handle confrontations with such persons insufficient to state a claim under § 1983 absent allegation of a pattern of constitutional violations by untrained employees sufficient to establish deliberate indifference); *Sexton v. Kenton Cty. Det. Ctr.*, 702 F. Supp. 2d 784, 791 (E.D. Ky. 2010) (holding that a municipality's alleged failure to discipline officers in a single instance, as opposed to a systemic policy, is

insufficient to survive a motion to dismiss).  Nor have the Plaintiffs pleaded any specific facts to suggest that the City failed to adequately prepare for recurring situations where a constitutional violation would be likely to take place.  *See Munson v. Bryan*, No. 3:15-cv-0078, 2015 WL 4112429, at *5 (M.D. Tenn. July 8, 2015) (where plaintiff failed to plead any specific facts to indicate municipality failed to adequately prepare for recurring situations in which constitutional violations may occur, there were no grounds to support a § 1983 claim against the county defendant).

Essentially, the Plaintiffs argue that the injury suffered by Mr. Epperson gives rise to the inference that the City failed in training and disciplining the officers involved.  To infer the existence of a city policy from the isolated misconduct of low-level officers, and then hold the city liable based on that policy, would amount to the very strict *respondeat superior* liability rejected by the Supreme Court in *Monell* and its progeny.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 399-400 (1989); *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005); *Tuell v. McCormick*, Civ. No. 3:14-cv-1834, 2015 WL 4727144, at *4 (M.D. Tenn. Aug. 7, 2015).  The Court finds that the allegations of the complaint with respect to municipal liability fall short of the requirements of *Iqbal*.   They are DISMISSED.

*Fourteenth Amendment Claims*

Plaintiffs aver that the actions of the Defendants violated the Fourth and Fourteenth Amendments.  The parties appear to be in agreement that, when considering excessive force claims, courts are to apply Fourth Amendment jurisprudence.  *See Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 400-01 (6th Cir. 2009) (where plaintiff brought § 1983 action alleging officer violated her constitutional right to be free of excessive force, court was to apply the Fourth Amendment's unreasonable seizure jurisprudence in analyzing the claim).  Plaintiffs

disagree, however, with the Defendants' position that no claims in this case could also fall under the rubric of the Fourteenth Amendment. Specifically, they contend that, as an alternative to their Fourth Amendment excessive force claims, the officers' conduct supports a "state-created danger" theory of liability in accordance with *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).

The Fourteenth Amendment Due Process Clause prohibits state and local governments from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The clause contains both procedural and substantive guarantees. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1635 (2013). Procedural due process generally provides that "government action depriving a person of life, liberty, or property . . . must . . . be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also EJS Props.*, 698 F.3d at 855. Substantive due process, on the other hand, "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *Salerno*, 481 U.S. at 746) (internal alterations & quotation marks omitted). In their response to the dispositive motion, the Plaintiffs advise the Court of their intention to invoke the latter.

Substantive due process protects against "governmental power . . . being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Courts must, however, "carefully scrutinize so-called substantive due process claims brought under § 1983 because guideposts for responsible

14

decisionmaking in this unchartered area are scarce and open-ended." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted). Therefore, when another provision of the Constitution "provides an explicit textual source" for protection against the alleged rights violation, it "must be the guide for analyzing [the] claims" instead of the "more generalized notion of 'substantive due process'" embodied in the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). When such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir.) (per curiam), *cert. denied*, 134 S. Ct. 341 (2013).

Generally speaking, the Due Process Clause "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, 489 U.S. at 196. The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* In *DeShaney*, a young boy who had been beaten and permanently injured by his father brought a due process claim against municipal officials for failing to remove him from his father's home after they had reason to believe he was being abused. *Id.* at 192-94. The United States Supreme Court declined to impose liability, finding that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201. This statement has led the Sixth Circuit, as well as others, to recognize an exception to the general rule for "state-created dangers." *See Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013). In this Circuit, a plaintiff may bring a state-created danger claim by demonstrating

> (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large; and (3) the requisite state culpability to establish a substantive due process violation.

*Id.* at 538-59 (quoting *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005)).

The complaint in this case, as noted above, alleges only that Mr. Epperson was involved in an incident in which he was detained, arrested and physically injured by the Defendant officers. The Plaintiffs have made no allegation that the officers placed him at risk of a violent act by a third party. Nor is there an allegation of a third party being present. Accordingly, the Plaintiffs have failed to properly allege a state-created danger claim. *See Camp v. Knox Cty., Tenn.*, No. 3:14-CV-257-PLR-HBG, 2015 WL 461642, at *4 (E.D. Tenn. Feb. 3, 2015) (where plaintiffs' state-created danger claim lacked allegations that defendants placed Camp at risk of an act of violence by a third party or that there was even a third party present, Fourteenth Amendment claim was dismissed; the proper analysis of the plaintiff's claim was the Fourth Amendment's reasonableness standard).

A second exception, the "custody" or "special relationship" exception, has also been recognized by the Sixth Circuit, *see Jahn v. Farnsworth*, ___ F. App'x ___, 2015 WL 3938035, at *9 (6th Cir. June 29, 2015); *Cutlip v. City of Toledo*, 488 F. App'x 107, 112 n.3 (6th Cir. 2012); *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005), arising from *DeShaney's* conclusion that, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. "The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to

16

provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Id.* at 200.  The state's affirmative act of restraining a person's freedom to act on his own behalf triggers substantive due process protections with respect to "incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pre-trial detainees, and those under other similar restraint of personal liberty." *Jackson*, 429 F.3d at 590 (internal quotation marks omitted).

This exception does not appear to the Court to apply to the facts alleged in this case and the Plaintiffs have offered little to convince it to the contrary.  The clear gravamen of the instant matter is excessive force.  "[I]f the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008).  In so finding, the *Lanman* court observed that "this is seen most clearly in the law enforcement setting of arrests or investigatory stops[.]" *Id.*  Accordingly, the true vehicle for this claim is the Fourth Amendment, which holds law enforcement officers accountable for injuries sustained as a result of a direct encounter between them and private citizens.  The Fourteenth Amendment claim is DISMISSED.  *See Lane v. Pulaski Cty., Ky.*, Civ. No. 12-62-GFVT, 2014 WL 996293, at *9 (E.D. Ky. Mar. 13, 2014) (in case involving the fatal shooting of the plaintiff's decedent by police during a domestic violence call, court dismissed Fourteenth Amendment substantive due process claim for deprivation of "enjoyment of life," describing plaintiff's claim as "trying to place a square peg in a round hole.").

State Law Claims.

### *Violations of the Tennessee Constitution*

The complaint alleges that the Defendants' actions violated the Tennessee Constitution. As the movants point out, however, courts have held there is no private right of action for damages under the Tennessee Constitution. *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Holloran v. Duncan*, ___ F. Supp. 3d ___, 2015 WL 1245551, at *20 (W.D. Tenn. Mar. 18, 2015); *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999). Plaintiffs' claim for damages under the Tennessee Constitution is DISMISSED.

### *Remaining State Law Claims*

Finally, Defendants move for dismissal of Plaintiffs' state law claims on immunity grounds. State law claims against governmental entities and their employees are governed by the GTLA. *See* Tenn. Code Ann. § 29-20-101; *Tillman v. Decatur Cty.*, No. 15-01068 JDB-egb, 2015 WL 5675843, at *5 (W.D. Tenn. Sept. 25, 2015). These claims would ordinarily confer supplemental jurisdiction in this Court because they arise out of the same facts and form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). However, GTLA claims must be brought in "strict compliance" with the terms of the state statute. *See* Tenn. Code Ann. § 29-20-201(c). The GTLA expressly states that Tennessee "circuit courts shall have exclusive original jurisdiction" over claims brought pursuant to its provisions. Tenn. Code Ann. § 29-20-307. A district court may, in its discretion, decline supplemental jurisdiction over a state law claim even if jurisdiction would otherwise be proper under § 1367(a). Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The Sixth Circuit has held that "the Tennessee legislature expressed a clear preference that [GTLA]

claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance [under § 1367(c)(4)] for declining jurisdiction." *Gregory v. Shelby Cty ., Tenn*., 220 F.3d 433, 446 (6th Cir. 2000). Consequently, district courts in Tennessee have regularly declined to exercise supplemental jurisdiction over GTLA claims, and this Court finds no compelling reason to act differently in this case. *See, e.g., Tillman,* 2015 WL 5675843, at \*5; *Hill v. Blount Cty. Sch.*, No. 3:14-CV-96-PLR-HBG, 2015 WL 729547, at \*6 (E.D. Tenn. Feb. 19, 2015); *Woodward v. City of Gallatin, Tenn.* No. 3:10-1060, 2013 WL 6092224, at \*9-10 (M.D. Tenn. Nov. 19, 2013). Therefore, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining GTLA and state law claims.[6] They are REMANDED to the state court in which they were originally brought.

<u>Request to Amend Complaint.</u>

In their response to the motion to dismiss, the Plaintiffs stated that, "[i]n the alternative, should the Court find Defendants['] motion to be meritorious and order the dismissal of any portion of the Complaint, Plaintiffs respectively request leave to amend." (D.E. 33 at 14.) However, "[a] request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is not a motion to amend." *Kuyat v. BioMimetic Therapeutics, Inc.,* 747 F.3d 435, 444 (6th Cir. 2014) (quoting *Louisiana Sch. Emps' Ret. Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 486 (6th Cir. 2010)); *see also New London Tobacco Mkt, Inc. v. Burley Stabilization Corp.*, No. 3:13-CV-122, 2013 WL 2112290, at \*3 (E.D. Tenn. May 15, 2013) ("It is unacceptable for a litigant to bury a motion inside a brief. A motion must be filed as a separate, freestanding document.") In addition, a party seeking

---

[6]Consequently, the Court will not address the Defendants' assertions with respect to immunity, and will not dismiss the state law claims on that basis.

amendment of a complaint should attach a copy of the proposed amendment to her motion. *Kuyat,* 747 F.3d at 444. Because a proper motion to amend is not before the Court, the request is DENIED without prejudice to the filing of an appropriate motion.[7]

## CONCLUSION

For the reasons set forth herein, the motion to dismiss is GRANTED in part and DENIED in part. The claims of Plaintiffs Mary and Janice Epperson are DISMISSED, as are the claims against the City of Humboldt and Robert Ellis. The following claims are also DISMISSED: (1) official capacity claims against Buford, Hill and Smith; (2) claims under the Fourteenth Amendment; and (3) claims pursuant to the Tennessee Constitution. The Plaintiffs' remaining state law claims are REMANDED to the Circuit Court for Gibson County, Tennessee. Plaintiffs' request to amend the complaint is DENIED without prejudice.

IT IS SO ORDERED this 21st day of October 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[7]According to the scheduling order entered May 1, 2015, the deadline for amending pleadings has expired. (D.E. 15 at 1.) Pursuant to the order, to extend the deadline, the Plaintiffs would be required to show good cause therefor. (*Id.* at 4.)