IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARY EPPERSON, individually and as
natural mother and next friend of the
Decedent, Eddie Ray Epperson; JANICE
EPPERSON, individually and as next of
kin and next friend of the Decedent; and
SHARAE WILLIAMS, individually and
as daughter and next friend of the Decedent,

    Plaintiffs,

v.                                                          No. 15-1074

CITY OF HUMBOLDT, TENNESSEE;
ROBERT ELLIS, individually and as Chief
of the Humboldt Police Department; ANTONIO
BUFORD, individually and as a member of the
Humboldt Police Department; KEVIN HILL,
individually and as a member of the Humboldt
Police Department; CHRIS SMITH, individually
and as a member of the Humboldt Police Department;
and JOHN DOES 1 THROUGH 10, individually and
as members of the Humboldt Police Department,

    Defendants.

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE

---

*INTRODUCTION*

      This action was initially brought on March 31, 2015, in the Circuit Court for Gibson County, Tennessee, by Plaintiffs, Mary Epperson, individually and as natural mother and next

1

friend of the decedent, Eddie Ray Epperson; Janice[1] Epperson, individually and as next of kin and next friend of the decedent; and Sharae Williams, individually and as adult daughter and next friend of the decedent, against Defendants, the City of Humboldt, Tennessee; Robert Ellis, individually and as Chief of the Humboldt Police Department ("HPD"); and HPD officers Antonio Buford, Kevin Hill, Chris Smith and John Does One through Ten, individually and as members of the HPD. Plaintiffs alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, and the Tennessee Constitution. The complaint also claimed violations of state law. The matter was removed to this Court on April 6, 2015. In an order entered October 21, 2015, the Court dismissed the claims of Plaintiffs Mary and Janice Epperson and dismissed and/or remanded certain claims of the remaining Plaintiff.[2] (D.E. 37.) Those claims still before the Court, against Defendants Buford, Hill and Smith (referred to collectively as the "Individual Defendants") in their individual capacities,[3] are the subject of a pending motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 46.)

---

[1] As noted in a previous order of this Court, while the original complaint identified this individual as "Janie," subsequent briefs filed by the Plaintiffs referred to her as "Janice." The Court has assumed the latter is correct.

[2] In the same order, the Court denied the Plaintiffs' motion to amend the complaint without prejudice as it was improperly submitted. (*See* D.E. 37 at PageID 163-64.) Shortly thereafter, on November 25, 2015, Plaintiffs filed a motion to amend in proper form (D.E. 39), which was referred to the United States Magistrate Judge for determination (D.E. 40). In an order entered March 7, 2016, the motion was denied. (D.E. 47.)

[3] Also remaining in this case are John Does One through Ten, who were not addressed in the instant motion.

## STANDARD OF REVIEW

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of a material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (internal quotation marks omitted). In conducting its review, the court is to "view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party." *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, ___ F.3d ___, 2016 WL 1169099, at *7 (6th Cir. Mar. 25, 2016). "In other words, at the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson*, 814 F.3d at 775 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal quotation marks omitted).

## FACTS

According to the declarations of Smith and Hill proffered to the Court, at approximately 8:51 p.m. on April 3, 2014, the two officers were at the Westside Grocery in Humboldt monitoring traffic at the intersection of McLin Street and Westside Drive. Hill gave the following account of the incident. The officers observed a black male walking in circles in the road and being nearly struck by a passing vehicle. Hill stated that, based on his experience, it appeared to him the man was under the influence of drugs or alcohol. When he exited his patrol car and called to him, the man ran north on Gibson Wells Road. A brief foot chase ensued, after which Hill caught the man, later identified as Eddie Ray Epperson. Epperson pushed Hill away,

whereupon the officer grabbed his shirt and attempted to place him under arrest. Epperson continued to struggle as Hill and Smith handcuffed him.

In the incident report authored by Hill, he related that, after he was almost hit by a car in the intersection, Epperson walked at a fast pace out of the roadway, stumbling as he went, and into a grassy area. He then returned to circling in the intersection, forcing a motorist to stop until he moved out of the way. Hill radioed to dispatch that he and Smith were going to speak to a person at the intersection who was acting suspiciously. At that time, Epperson had started walking west on McLin Street. The officers pulled up behind him in their squad car and turned its headlights on him. He walked into a grassy area near West Side Projects. Hill pulled into an apartment complex parking space, got out of the car and asked, "Hey, man, what's wrong?" It was then that he realized the man was Epperson. When Hill asked the man to come speak with him, Epperson began slowly running away. As the space between them closed, Hill said, "Stop, Eddie Ray." The officer caught up with Epperson and the man pushed him away. Hill grabbed his shirt and again asked, "Eddie Ray, what's wrong?" Epperson turned and Hill observed that his eyes were very large and his pupils dilated. He had a white ring around his mouth and was breathing very heavily. Hill asked a third time what was wrong. Epperson pushed him away again, moaning and grunting as he did so. At that point, Smith arrived with the unit and Hill pushed Epperson, dazed and resisting, to the car. When he continued to fight the officers as they attempted to handcuff him, Smith took Epperson to the ground with a leg sweep maneuver. The arrestee struggled and screamed as Smith checked the pockets on his left side. As he did so, Hill noticed Epperson had something that looked like currency clenched in his left hand. He took it away and searched the man's right side pockets. Buford appeared on the scene and knelt with his hand on Epperson's back. Hill reached into Epperson's right front pocket and pulled out

4

loose change, some small pieces of white paper, Carmex,[4] and a small clear plastic baggie containing a green leafy substance. The officers rolled Epperson over so they could load him into the patrol car and noticed that he was neither moving nor breathing. He later died.

According to Smith's declaration, he and Hill saw a black male run across Gibson Wells Road to the grocery store parking lot, turn and cross McLin Street. He walked in front of cars and began moving in circles. One vehicle in the street nearly struck him. The man, unsteady on his feet, continued to walk in circles and began flapping his arms. As it appeared to Smith the man was under the influence, he and Hill approached him to check his condition. Hill called to the man and, as the officers walked toward him, he ran away. Hill pursued on foot while Smith followed them in a patrol car. Hill grabbed his shirt as Epperson waved his arms behind him. Smith positioned the police vehicle to prevent the man's escape. When Hill placed Epperson against the unit, he began fighting and resisting the officers. Smith took hold of his left arm while Hill attempted to grab his right. Smith did a leg sweep maneuver and took Epperson to the ground. At that point, the officers were able to place handcuffs on the man. Both officers stated that they did not know whether Epperson was armed.

A copy of what appears to be an HPD internal record on Eddie Ray Epperson, provided by Williams in response to the instant motion, indicated a previous arrest on December 28, 2013, with a notation of "Mental Illness." She also submitted to the Court a toxicology report reflecting that the decedent was not in fact under the influence of alcohol but tested positive for cocaine.

---

[4]Carmex is a brand of lip balm.

## THE POSITIONS OF THE PARTIES AND ANALYSIS

Section 1983 Generally.

Section 1983 provides a private right of action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights[ or] privileges . . . secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). The statute "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Okla. City v. Tuttle*, 471 U.S. 808 (1985)). A plaintiff suing under the statute must demonstrate the denial of a constitutional right caused by a defendant acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

Qualified Immunity.

The Individual Defendants have raised the defense of qualified immunity, which protects officials from suit and damages liability in their individual capacities. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The doctrine "shields officials from liability insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Peatross v. City of Memphis*, ___ F.3d ___, 2016 WL 1211916, at *4 (6th Cir. Mar. 29, 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal alterations & quotation marks omitted). Qualified immunity "balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified

immunity defense" once it is invoked by a defendant.  *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016)*; see also Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013).

"At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established.  In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a genuine issue of fact, that is, evidence on which a jury could reasonably find for the plaintiff."  *McDonald*, 814 F.3d at 812 (internal alteration, citation & quotation marks omitted).  The elements may be addressed in any order.  *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).  If the court determines that "either one is answered in the negative, then qualified immunity protects the official from civil damages."  *Id.*

*Alleged Constitutional Violations*

Because it is dispositive, the Court will focus its attention on the existence of a constitutional violation.  Williams has identified the constitutional right at issue as arising from the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . but upon probable cause[.]"  U.S. Const. amend. IV.  She has alleged that the Defendants in this case violated Epperson's Fourth Amendment rights through arrest absent probable cause and the use of excessive force.  In response to the motion for summary judgment, however, the Plaintiff advised the Court that she agrees there is no factual basis for a discrete claim of excessive force against the Individual Defendants.  Therefore, the excessive force claims are DISMISSED.

The Court now turns to the unlawful arrest claims.  At the outset, the Court notes that it is undisputed Defendant Buford was not present until after Epperson had been restrained.  Indeed, the Plaintiff's brief refers only to the actions of Hill and Smith, with no mention whatever of

Buford. The Court assumes, therefore, that any claims against Buford arising from the alleged unconstitutional arrest of Epperson have been abandoned.

There are three types of permissible encounters between police and citizens. *United States v. Almaatani*, ___ F. App'x ___, 2015 WL 9209679, at *3 (6th Cir. Dec. 17, 2015). Officers may initiate "consensual encounters" with individuals by approaching them in public and asking them questions without offending the Constitution. *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1131 (6th Cir. 2015) (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002)). The stop and frisk of an individual requires "reasonable suspicion" that he has committed, or is about to commit, a crime. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968)). "More than an inchoate and unparticularized suspicion or hunch is needed to stop and frisk an individual; the officer must identify specific and articulable facts of criminality." *Id.* (citing *Terry*, 392 U.S. at 27) (internal quotation marks omitted). An arrest passes constitutional muster so long as it is made with probable cause. *Almaatani*, 2015 WL 9209679, at *3. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

"Probable cause is reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Amis v. Twardesky*, ___ F. App'x ___, 2015 WL 8538446, at *2 (6th Cir. Dec. 10, 2015) (quoting *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010)) (internal quotation marks omitted). "It does not require an actual finding of a violation; rather a probability or substantial chance of criminal activity is all that is required." *United States v. Collazo*, ___ F.3d ___, 2016 WL 1211948, at *5 (6th Cir. Mar. 29, 2016) (internal quotation

marks omitted). "[T]he ultimate measure of the constitutionality of a governmental [seizure] is 'reasonableness.'" *Maryland v. King*, 133 S. Ct. 1958, 1969 (2013).

The Individual Defendants contend they had reasonable suspicion to believe Epperson was intoxicated in public in violation of Tennessee Code Annotated § 39-17-310, which provides that

> [a] person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance, controlled substance analogue or any other intoxicating substance to the degree that . . . [t]he offender may be endangered; . . . [t]here is endangerment to other persons or property; or . . . [t]he offender unreasonably annoys people in the vicinity.

Tenn. Code Ann. § 39-17-310(a). A "public place" is defined as

> a place to which the public or a group of persons has access and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, places of business, [and] playgrounds . . . An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place.

Tenn. Code Ann. § 39-11-106(a)(29). A public street falls within the definition of a "public place." *United States v. Elder*, No. 3:07-CR-151, 2008 WL 3852339, at *12-13 (E.D. Tenn. Aug. 14, 2008) (adopting report & recommendation).

It is undisputed that the decedent was in a public place. In observing Epperson walking in circles in an intersection in front of oncoming traffic, stumbling about, being nearly struck by vehicles and forcing others to stop, it was reasonable for the officers to suspect he was under the influence of an intoxicating substance. Williams, however, insists that Hill and Smith had no basis for approaching, much less arresting, the decedent because he was not drunk, citing the toxicology report. This argument falls flat for two reasons. First, in order to conduct an investigatory *Terry*-type stop, officers need only reasonable suspicion that criminality is afoot, not certainty. *See Northrup,* 785 F.3d at 1131. Second, by its terms, the public intoxication

statute applies not exclusively to alcohol, but to "controlled substance[s], controlled substance analogue[s] or any other intoxicating substance." Tenn. Code Ann. § 39-17-310(a); *see Elder*, 2008 WL 3852339, at *3-4 (defendant's bloodshot eyes and odor of burnt marijuana provided probable cause for arrest under § 39-17-310(a) for marijuana intoxication). A "controlled substance" is "a drug, substance, or immediate precursor in Schedules I through VII." Tenn. Code Ann. § 39-17-402(4). Cocaine, which the toxicology report indicated was present in Epperson's system, is a Schedule II controlled substance under Tennessee law. *See* Tenn. Code Ann. § 39-17-408(b)(4). The Court finds that Plaintiff has failed to offer sufficient evidence to create a genuine issue of fact as to whether the Individual Defendants had reasonable suspicion to stop Epperson. *See McDonald*, 814 F.3d at 812, *supra.*

The movants also maintain that they had probable cause to make an arrest. Williams challenges this assertion, citing to two recent decisions from Tennessee courts: *State v. Pippen*, No. M2015-00828-CCA-R3-CD, 2016 WL 368313 (Tenn. Crim. App. Jan. 28, 2016) and *State v. Brandon*, No. E2014-00591-CCA-R3-CD, 2015 WL 230362 (Tenn. Crim. App. Jan. 16, 2015).

In *Pippen,* officers of the Lewisburg, Tennessee, police department were called to an apartment complex on a report of fighting in the parking lot and "possibly intoxicated individuals." *Pippen*, 2016 WL 368313, at *1. Upon arriving, officers approached Pippen, who appeared intoxicated, smelled of alcohol and was unsteady on his feet. *Id.*

> Officer Brannon testified that the Defendant had stated that he had been involved in "an altercation" with two other people, Michael Crowder and Shelly Weir. According to Officer Brannon, the Defendant stated that the incident started in their apartment and spilled out into the parking lot. Officer Brannon testified that he believed Ms. Weir had fallen down during the altercation but admitted that he was "not exactly clear on the whole story." The Defendant then pointed out that Mr. Crowder and Ms. Weir were on the other side of the parking lot. In addition

>   to Mr. Crowder and Ms. Weir, Officer Brannon recalled that the Defendant's "wife had arrived on the scene in a car" and that there were "two individuals over on the cross way."

*Id.* When officers made the scene, Pippen was alone in the parking lot and Crowder and Weir were approximately fifty to 100 yards away from him. *Id.* at *6. On these facts, Brannon concluded that Pippen was a nuisance and a danger to himself and others, and arrested him. *Id.* at *1. During a search of Pippen's person incident to his arrest for public intoxication, officers found marijuana in his pocket. *Id.*

On appeal of the trial court's denial of his motion to suppress the marijuana, the Tennessee Court of Criminal Appeals found there was no probable cause to arrest Pippen for public intoxication, noting that

> [t]he Defendant, while exhibiting the classic[] signs of intoxication, was in the parking lot of his residence. There was no proof that the Defendant was unable to walk or stand, or that he was disoriented or incoherent. As such, the facts, circumstances, and reliable information known to the officers did not warrant a prudent person's belief that the Defendant was intoxicated to the extent that he was a danger to himself or others.

*Id.* at *6, 8.

In *Brandon*, officers of the Harriman, Tennessee, police department received reports of a vandalized vehicle and a potential robbery in progress at a home at night. *Brandon*, 2015 WL 230362, at *1. The victims apparently identified Brandon as the perpetrator and officers began scanning the neighborhood for him. *Id.* at *1-2. An officer located the man on a nearby street and approached him with his marked patrol car, headlights and blue lights deactivated. *Id.* at *2. The officer directed Brandon twice to step in front of the car for the purpose of interviewing him about the recent crimes and, as he exited the car, the man took off at a run. *Id.* The officer testified at trial that he noticed the odor of alcohol both before and after he apprehended the

suspect. *Id.* Brandon was later indicted and convicted for public intoxication and evading arrest.[5] *Id.* at *1.

Williams cites *Brandon* for the court's finding that there was insufficient evidence that the officer was actually attempting to arrest the suspect at the time he ran and that it was unclear whether he had probable cause to arrest Brandon for public intoxication until after he was apprehended. However, in doing so, the court was analyzing whether there was sufficient evidence submitted at trial to support an arrest for evading, which is not at issue here. In contrast, the court found there was sufficient proof to sustain a conviction for public intoxication, noting that Brandon had slurred speech, smelled of alcohol and admitted to drinking a couple of beers that evening. *Id.* at *6. In addition, police had received two complaints about Brandon's behavior that night, sufficiently showing that he had unreasonably annoyed others in the vicinity. *Id.*

The Plaintiff further points out that an officer may not affect a mental health seizure absent probable cause. It is true that, where suspected criminal activity is absent, law enforcement officers may not seize an individual merely to assess his mental fitness. *Zucker v. City of Farmington Hills*, ___ F. App'x ___, 2016 WL 1019041, at *7 (6th Cir. Mar. 14, 2016) (citing *McKenna v. Edgell*, 617 F.3d 432, 440 (6th Cir. 2010) & *Fisher v. Harden*, 398 F.3d 837, 842 (6th Cir. 2005)).

> [T]he Fourth Amendment protects individuals from state-sanctioned detention for a psychiatric evaluation absent probable cause to believe that the person is dangerous to himself or others. In this context, a showing of probable cause requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior. When examining whether officers had probable cause to believe that an individual posed a danger, [the Sixth Circuit] has

---

[5]The original charge was for resisting arrest, but was later amended by agreement of the parties to evading arrest. *Brandon*, 2015 WL 230362, at *1.

cautioned that probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts, requiring courts to evaluate the facts known to officers from the perspective of a reasonable and objective person in those officers' position.

*Id.* (internal citations & quotation marks omitted). "Just as actual innocence will not render invalid an arrest that is properly based on probable cause that criminal activity was occurring, a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition." *Fisher,* 398 F.3d at 843.

Williams' attempts to thwart application of the qualified immunity defense on probable cause grounds are also unavailing. The undisputed facts before the Court support a finding of probable cause to arrest Epperson for violating the public intoxication statute.[6] The cases cited by the Plaintiff do not convince the Court otherwise. This matter is clearly distinguishable from *Pippen*, as, unlike the defendant therein, Epperson's actions, conducted in a public place, clearly

---

[6]Williams makes much of the fact that at least one of the Individual Defendants knew Epperson and, thus, "knew very early in this series of events who they were dealing with." (D.E. 48 at PageID 275.) The Court assumes the Plaintiff is suggesting that these officers were aware he suffered from mental illness and, as a consequence, lacked probable cause for an arrest for public intoxication. However, the only purported evidence thereof is the notation on the HPD document provided by the Plaintiff of "Mental Illness" from four months prior to the incident at issue. It establishes neither that he suffered chronic, ongoing psychiatric issues nor that any of the Individual Defendants knew about the notation or that Epperson suffered from a mental illness.

The document named the intake officer, the searching officer and presumably the arresting officer in connection with Epperson's December 28, 2013, arrest. None of the named individuals are parties to this case. In fact, it is not entirely clear to the Court, and none of the parties have explained, whether the phrase "Mental Illness" on the form, which was printed and had no other words around it to provide context, was an indication of mental illness on Epperson's part or merely part of a standard printed form and meant to be circled or otherwise recognized if it applied. The words "Mental Illness" share the same typefont used in the document for clearly form words such as "Race," "Height" and "Hair." Additionally, "Mental Illness" is in upper and lower case, as are "Race," "Height" and "Hair," while obviously filled-in words, such as Epperson's employment history, address, and name of next of kin, are in all capital letters.

warranted a reasonable officer's belief that he was a danger to himself as well as drivers on the streets of Humboldt. If anything, the *Brandon* court's determination with respect to the public intoxication arrest reinforces a finding that probable cause existed in this case. Further, when Hill told Epperson he wanted to speak with him, he fled and continued to do so despite Hill's directives to stop, ripening initial reasonable suspicion into probable cause. *See United States v. Williams*, 475 F. App'x 36, 40 (6th Cir. 2012) ("Once Officer Edwards approached Williams and informed him that he was a police officer, Williams fled. Williams continued to run even after being chased and being told to stop multiple times. The officers' reasonable suspicion ripened into probable cause once Williams fled."); *see also United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995) ("We find under the circumstances here that Detective Gannon's effort to restrain Dotson was an appropriate degree of force to effectuate the *Terry* stop, and that Dotson's attempt to flee ripened Detective Gannon's reasonable suspicion into probable cause to arrest Dotson."). The uncontroverted facts also provided probable cause for a mental health seizure, as Epperson's behavior posed a danger to himself and others.

For the reasons set forth herein, the Court finds that the Plaintiff has fallen short of establishing that the Individual Defendants violated a constitutional right. *McDonald*, 814 F.3d at 812 (finding that, to survive summary judgment, a plaintiff must establish the violation of a constitutional right and that the right was clearly established). Accordingly, the Individual Defendants are protected from civil damages by qualified immunity. *See Brown*, 814 F.3d at 457 (if the court determines that the plaintiff fails to demonstrate either a constitutional violation or

that the constitutional right violated was clearly established, then qualified immunity protects the official from civil damages).[7]

John Doe Defendants.

Although neither party addressed the issue in their briefing, the "John Doe" Defendants remain parties to this action. "'John Doe' pleadings are an acceptable practice if the 'John Doe' is an actual person or entity that can be identified through discovery and served accordingly." *Shepherd v. Voitus,* No. 4:14 CV 866, 2015 WL 4599609, at *1 (N.D. Ohio July 29, 2015). However, a plaintiff suing such defendants must comply with Fed. R. Civ. P. 4(m) by serving the "John Does" within the time specified therein.[8] *Id.* As Williams has neither identified nor served them, they are dismissed from this action without prejudice. *See Shulman v. Amazon.com.kydc, LLC*, Civ. Action No. 13-5-DLB-REW, 2015 WL 1782636, at *5 n.6 (E.D. Ky. Apr. 20, 2015) (where plaintiff failed to identify or serve John Doe defendants within the time prescribed by Rule 4(m), dismissal of those defendants was appropriate), *appeal filed* (No. 15-6211) (6th Cir. Nov. 2, 2015).

*CONCLUSION*

For the reasons set forth herein, the motion for summary judgment is GRANTED and this case is DISMISSED in its entirety. Dismissal of the John Doe Defendants is without prejudice.

---

[7]Based on the Court's conclusion, it is unnecessary to address the "clearly established" prong of the qualified immunity claim. Nor does the Court need to consider, in light of its determination that no constitutional right was violated, the Individual Defendants' assertions concerning any belated conspiracy to violate a clearly established right claim set forth in Plaintiff's brief.

[8]The current version of Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed," the court must dismiss the action without prejudice against that defendant. Fed. R. Civ. P. 4(m). Prior to 2015, the time period for service was 120 days.

IT IS SO ORDERED this 29th day of April 2016.

                                                   s/ J. DANIEL BREEN
                                                   CHIEF UNITED STATES DISTRICT JUDGE